In re Robert L. CLARK, Debtor.

Byron Z. Moldo, Chapter
7 Trustee, Appellant,

v.

Robert L. Clark; United States
Trustee; Appellees.

BAP No. CC–00–1690–MOPB.
Bankruptcy No. SV 96–17254–KL.

United States Bankruptcy Appellate Panel
of the Ninth Circuit.

Argued and Submitted June 22, 2001.

Filed Aug. 6, 2001.

Peter A. Davidson, Kenneth Miller, Rein, Evans & Sestanovich, Los Angeles, CA, for Byron Z. Moldo, trustee.

Sue Ann Howard, Law Offices of Sue Ann Howard, Lancaster, CA, for Robert L. Clark.

Before: MONTALI, PERRIS and BRANDT, Bankruptcy Judges.

## OPINION

MONTALI, Bankruptcy Judge.

In this case the debtor filed inaccurate schedules showing ownership of non-existent assets and claiming them as exempt. When the trustee attempted to sell un-scheduled assets, the debtor convinced the bankruptcy court that those assets were the same as those he had claimed exempt.

■ Byron Z. Moldo, chapter 7 [1] trustee (the "Trustee"), appeals from the Bankruptcy Court's order denying the Trustee's motion to sell real property free and clear of the claim of exemption of debtor Robert L. Clark ("Debtor"). The Trustee did not object to Debtor's claim of exemption within the time allowed by Rule 4003(b),[2] but argues that he was not required to object because Debtor's Schedules B and C did not adequately describe Debtor's interest in the subject property. We agree with the Trustee and REVERSE and RE-MAND.

## I. FACTS

Debtor filed a chapter 13 petition on August 5, 1996. The case was converted to chapter 7 on June 17, 1998, upon motion by Debtor, and the Trustee was appointed.

Debtor did not file new schedules in the chapter 7 case, so the pertinent information is found in the schedules that were filed in the chapter 13 case. In the Schedule B list of personal property assets, under Item 11 (entitled "Interests in IRA, ERISA, Keogh, or other pension or profit-sharing plans"), Debtor listed "FIVE LOTS LISTED IN QUALIFIED RETIREMENT PLAN," and the value of such property at $100,000;[3] at Item 19 (entitled "Contingent and non-contingent interests in estate of a decedent, death benefit plan, life insurance policy, or trust"), Debtor listed nothing. In the Schedule C list of property claimed exempt, Debtor listed, *inter alia,* "FIVE LOTS LISTED IN QUALIFIED RETIREMENT PLAN," citing "704.115"[4] as the source of the exemption, valuing the property at $100,000, and claiming that amount exempt.

The chapter 7 meeting of creditors provided for by section 341 was commenced on July 24, 1998. The record on appeal does not include a transcript of that meeting, but the Trustee's brief on appeal states without contradiction that he asked Debtor during the meeting to provide information "on the 'five lots listed in qualified retirement plan' listed on Debtor's Schedule 'B' and claimed exempt on Debtor's Schedule 'C' and a trust agreement mentioned by the Debtor." The meeting was continued to August 28, 1998, pending the Trustee's receipt of the requested information, and was concluded on that date. The Trustee filed a form entitled "TRUSTEE'S WORKSHEET ON 341 MEETING" on September 8, 1998. The form was annotated to state "no need to appear—info

---

1. Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330, and to the Federal Rules of Bankruptcy Procedure, Rules 1001–9036.

2. The rule provides that objections must be filed within 30 days after the later of conclusion of the section 341 meeting or the filing of an amendment to the list of property claimed exempt or supplemental schedules, unless the time is extended for cause upon request made during the objection period.

3. Debtor did not include the lots in the Schedule A list of real property assets.

4. This is apparently a citation to California Code of Civil Procedure ("CCP") § 704.115, entitled "Private retirement plans; exemption; periodic payments."

received" and "checking assets,"[5] and showed the meeting to be concluded.[6]

Neither the Trustee nor any other creditor filed an objection to the exemption claim stated in Debtor's Schedule C as "FIVE LOTS LISTED IN QUALIFIED RETIREMENT PLAN." An order granting Debtor's discharge pursuant to section 727(b) was entered on March 22, 1999.[7]

On July 14, 1999, the Trustee applied for an order authorizing him to employ a real estate broker to list and sell four of the lots in which the Trustee contended that Debtor held an interest, although title to the lots was vested in a trust.[8] That application was granted by an order issued on July 23, 1999. Debtor filed a motion to reconsider that order on the basis that the lots in question had been claimed exempt without timely objection and were therefore not part of the bankruptcy estate and could not be sold by the Trustee.

On August 24, 1999, the Trustee filed a response to Debtor's motion for reconsideration, opposing it on the merits and also because the motion did not comply with the local rules and provide a declaration of facts. The Trustee's opposition to Debtor's reconsideration motion stated, *inter alia*, that:

Upon review of the Debtor's Schedule B, the Trustee noted that among the Debtor's assets were "five lots listed in qualified retirement plan" ("Five Lots") which were valued at $100,000. The Trustee also noted that the Debtor marked "X" for none to item #19 on Schedule B which asked about any interest in a trust.... Additionally, the Trustee noted that the Debtor claimed an exemption for the Five Lots on his Schedule C in the amount of $100,000.

The Trustee's Opposition further stated that the Trustee asked Debtor at the initial section 341 meeting to provide a copy of the " 'qualified retirement plan' within which the Debtor purported to hold the five lots," and received a copy of a document with a cover page entitled "California Pension Administrators & Consultants, Inc. Trust Agreement (Self Trustee)," followed by a page stating "Amendment No. 2," which was an incomplete form with blanks that had not been filled in; the signature lines on "Amendment No. 2" show Debtor as both "Trustee" and "Firm."

The Trustee's opposition also contended that the Trustee asked Debtor's attorney for "a listing of properties held in the Trust," and Trustee then ordered prelimi-

---

**5.** Debtor's brief on appeal states that the Trustee eventually filed a report of no assets in the estate, but the Trustee denies having done so and the bankruptcy case docket shows that no such report has ever been filed. In any event, it is irrelevant to the issues on appeal whether a no asset report was filed, since such a filing would not have effected an abandonment of estate property pursuant to section 554.

**6.** Conclusion of the section 341 meeting started the time for objections running pursuant to Rule 4003(b). *See Smith v. Kennedy (In re Smith)*, 235 F.3d 472 (9th Cir.2000); *Moldo v. Blethen (In re Blethen)*, 259 B.R. 153 (9th Cir. BAP 2001); *Chubb & Son, Inc. v. Clark (In re Clark)*, 262 B.R. 508 (9th Cir. BAP 2001).

**7.** Debtor argued in the Bankruptcy Court and on appeal (citing no apposite authority) that issuance of the discharge somehow should have prevented the Trustee from asserting an interest in property. That is not the law. Pursuant to section 524, a discharge provided by section 727(b) merely protects debtors from personal liability for certain debts. The discharge has no effect upon an estate's interest in property or a trustee's administration of estate property.

**8.** The record on appeal does not indicate that the Trustee took any action concerning the fifth lot referred to in Schedules B and C.

nary title reports for four of the lots; those reports showed title to be held by Robert L. Clark, Trustee of the Robert L. Clark Trust dated December 5, 1988. The Trustee argued that the four lots had not been properly claimed exempt and therefore remained part of the bankruptcy estate and subject to sale by the Trustee. The Bankruptcy Court denied Debtor's reconsideration motion without reaching the merits because it was not supported by a declaration of facts as required by the local rules.

Debtor did nothing further and the Trustee proceeded to market the four lots. On August 15, 2000, the Trustee filed a motion for authorization to accept the best offer received ($75,000 total for three of the lots), saying that he was entitled to sell property of Debtor's trust for the benefit of the estate.[9] The Trustee's motion sought to sell free and clear of a disputed lien and alluded to a past dispute about Debtor's exemption claim, but did not pray for authorization to sell free and clear of the exemption claim. The hearing was continued twice at the request of Debtor, and Debtor then filed an opposition to the sale.[10] In his opposition, Debtor raised the same argument that he had made in his reconsideration motion, *viz.*, that the property had been claimed exempt without objection and was therefore no longer part of the bankruptcy estate and could not be sold by the Trustee. The Trustee re-

sponded with the same argument that he had made in opposing Debtor's reconsideration motion, *viz.*, that the property had not been properly exempted from the estate and therefore remained available to be sold.

After a hearing, the Bankruptcy Court issued an order denying the Trustee's motion to sell the three lots on the basis that such property was exempt because the Trustee did not file a timely objection to Debtor's Schedule C exemption claim, citing *Taylor v. Freeland & Kronz*, 503 U.S. 638, 641–45, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992).

The Trustee timely appealed, contending: first, that the subject lots were not "validly exempt" and their sale by the Trustee therefore should have been approved; and, second, that sale free and clear of any exemption claim should have been authorized pursuant to section 363(f)(4) on the basis of a *bona fide* dispute concerning the property's exempt status, pending litigation of such dispute.

## II.  ISSUES

A.  Whether the Bankruptcy Court erred in denying the Trustee's motion to sell the subject property because it had been claimed exempt without timely objection and was therefore no longer estate property subject to sale by the Trustee.

---

**9.**  Curiously, Trustee bypassed what appears to be at least a preliminary obstacle to his ability to sell property in a trust. He acknowledged that the property was held in a trust, then stated: "[T]rustee is entitled to act as trustee of the Clark Trust. Acting as trustee of the Clark Trust, [Trustee] is entitled to sell the Properties for the benefit of the Estate."

It is not clear to us how Trustee can make the leap from the Clark Trust, apparently ignoring its beneficiaries, and sell for the bankruptcy estate without first dissolving the Clark

Trust, obtaining the consent of its beneficiaries, or doing something else. Perhaps the Bankruptcy Court can sort out this confusion on remand; we offer no opinion just what should be done.

**10.**  Debtor's opposition was late under the local rules, but the Bankruptcy Court ruled in its order of November 9, 2000, that, notwithstanding Debtor's untimely filing, it was appropriate to address the grounds stated in the opposition because they went "to the heart of" the Trustee's *prima facie* case.

B. Whether the Bankruptcy Court erred in failing to authorize sale of the subject property free and clear of any exemption claim pending litigation of a *bona fide* dispute regarding the property's exempt character, pursuant to section 363(f)(4).

## III.  STANDARD OF REVIEW

■ Rulings on motions to sell property of the estate other than in the ordinary course of business pursuant to section 363 are reviewed for abuse of discretion. *See Rosenberg Real Estate Equity Fund III v. Air Beds, Inc. (In re Air Beds, Inc.)*, 92 B.R. 419, 422 (9th Cir. BAP 1988); *Committee of Equity Security Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir.1983). A court abuses its discretion when it bases its ruling on an erroneous view of the law. *See Predovich v. Staffer (In re Staffer)*, 262 B.R. 80, 82 (9th Cir. BAP 2001).

■ Whether property is included in a bankruptcy estate is a question of law, subject to *de novo* review. *See Cisneros v. Kim (In re Kim)*, 257 B.R. 680, 684 (9th Cir. BAP 2000).

## IV.  DISCUSSION

### A.  Denial of sale due to exemption claim.

■ The Trustee argues that Debtor's exemption claim of "FIVE LOTS LISTED IN QUALIFIED RETIREMENT PLAN" did not identify the property being claimed exempt sufficiently to effect exemption at all; as a result, there was no exemption claim to object to, and the time within which objections must be made therefore never commenced to run. The Trustee correctly points out that a debtor controls the schedules and bears the burden of enabling trustees and creditors "to determine precisely whether a listed asset is validly exempt simply by reading a debtor's schedules," so that any ambiguity is construed against the debtor, citing *Hyman v. Plotkin (In re Hyman)*, 967 F.2d 1316, 1319 n. 6 (9th Cir.1992) (*"Hyman"*) and *Seror v. Kahan (In re Kahan)*, 28 F.3d 79, 82 (9th Cir.1994) (*"Kahan"*). The Trustee also cites *Andermahr v. Barrus (In re Andermahr)*, 30 B.R. 532, 533 (9th Cir. BAP 1983) (*"Andermahr"*), which holds that a "non-specific" exemption claim stated as "other assets of the petitioner" has no legal effect. The Trustee's position is that, while *Taylor* states the rule of automatic exemption by default in the absence of a timely objection, there are circumstances under which that rule does not apply and this is one of them.

One such circumstance occurred in *Hyman,* where the debtors' exemption claim stated that it pertained to their "homestead," cited CCP § 704.720,[11] and set forth the value of the exemption as $45,000. The trustee never objected to that claim, but did seek to sell the property. The debtors argued that they had claimed the entire property exempt and that it was set aside as exempt pursuant to section 522(1) when no timely objection was made to their claim. The Ninth Circuit held that:

> the [debtors] did not sufficiently notify others that they were claiming their entire homestead as exempt property; their schedule only gave notice that they claimed $45,000 as exempt, which is the proper amount of their homestead allowance under [CCP § 704.720 and

---

11. That statute is entitled "Extent of homestead exemption; exemption for proceeds of sale, insurance, indemnification or compensation; separate homesteads of debtor and spouse" and provides, *inter alia,* that "A homestead is exempt from sale under this division to the extent provided in Section 704.800."

§ 704.730] [citation omitted]. Thus, the trustee had no basis for objecting, and could well have suffered the bankruptcy judge's ire had he objected to the $45,000 exemption to which the [debtors] were clearly entitled.

*Hyman*, 967 F.2d at 1319. The *Hyman* Court noted that, under *Taylor*, property claimed exempt is "automatically exempt" in the absence of a timely objection (regardless of whether the exemption claimed is a valid one), but that result did not follow where the exemption claim was so ambiguous that potential objectors were not put on notice of what property was being claimed exempt. *Id.* at 1319 n. 6.[12]

The court made a comparable analysis of an ambiguous claim of exemption in *Kahan*, where the debtor first claimed his home exempt under CCP § 704.740[13] to the extent of $45,000; four years later, he amended his schedule and claimed the property exempt to the extent of his entire joint tenancy interest (which was worth $187,500). No objection was made to the initial claim, but the trustee did object to the amended claim within the time provided by Rule 4003(b). The debtor argued that the amended claim did not operate to commence a new objection period because it was merely a "clarification" of the original claim, which had become final and binding when no timely objection was made to it. The Ninth Circuit held that the second claim did not just clarify the first because the two claims differed "significantly," inasmuch as the original claim

exempted only $45,000 worth of the debtor's interest in the property, whereas the amended claim exempted all of his interest in the property. The Court pointed out that the debtor's arguments were identical to those made and rejected in *Hyman*, and held that the original claim did not impart notice that the debtor claimed an exemption exceeding $45,000.

■ In *Andermahr*, decided nine years prior to *Taylor*, the debtor claimed the grubstake, or wildcard, exemption of $7,900 that was then provided by section 522(d)(5) and applied $4,650 of it to various specific assets. He then applied the $3,250 balance of the available exemption to what was described only as "other assets of the petitioner." The trustee did not object to the exemption claim, but did collect a $2,202 tax refund issued months later. The debtor argued that the refund was exempt because it was encompassed by the "other assets of the petitioner" that had been claimed exempt without timely objection. We held that:

> The non-specific claim of exemption gives the debtor no rights, legally or practically. It is mandatory under the language of the statute that the debtor file a list of the property he claims exempt. 11 U.S.C. § 522(1). A list of property connotes a selection of specific properties. The claim to "other assets of the petitioner" does not comply with the statute.

---

**12.** Shortly prior to oral argument, the Trustee filed a Notice of Recent Decision, citing *Soost v. NAH, Inc.* (*In re Soost*), 262 B.R. 68 (8th Cir. BAP 2001). That case holds (in the context of avoiding a judicial lien under section 522(f) as an impairment of exemption) that an exemption claim stating the value of the exemption to be $1.00 does not operate to exempt the entire property, but renders exempt only $1.00 worth of the property's value, with the rest of the property remaining in the es-

tate and subject to administration by the trustee. *Soost* cites *Hyman* and employs the same rationale.

**13.** That section is entitled "Sale of dwelling to enforce money judgment" and provides, *inter alia* that "the interest of a natural person in a dwelling" is exempt as provided by CCP Article 4; Article 4 sets forth, at section 704.730, several alternative amounts of exemption.

Even without the statutory mandate, the practicalities of bankruptcy administration require that the trustee be advised of the precise items of property in the estate, 11 U.S.C. § 541(a), that the debtor elects to withdraw from the estate. The trustee needs this information in order to judge the validity of the exemption claim and to know what property remains in the estate for purposes of liquidation.

*Andermahr*, 30 B.R. at 533. Although *Andermahr* was decided prior to *Taylor*, its rationale is consistent with that of *Hyman* and *Kahan*, which were both decided after *Taylor*. All three cases hold that an ambiguous exemption claim that does not clearly specify the property being claimed exempt invokes no duty to object, and failure to object to such a claim does not render the claimed exemption effective.

Another example of an ambiguous exemption claim was at issue in *Alderman v. Martinson (In re Alderman)*, 195 B.R. 106, 111 (9th Cir. BAP 1996). In that case, the debtor claimed property exempt as a homestead under Montana law and stated the value of the exemption claim as "maximum allowed;" the property was owned by a partnership in which the debtor held an undetermined percentage interest of less than 100%, and the available exemption was limited to $40,000 for the entire property. The trustee did not object to the exemption claim but, after the objection period expired, moved to have the court determine the value of the debtor's exemption, and sought turnover of sale proceeds that exceeded such amount. The debtor argued that, under *Taylor*, he was entitled to exempt the maximum of $40,000 allowed by Montana law, since there had been no timely objection to his exemption claim. We considered, *inter alia*, *Hyman* and *Kahan*, and concluded that:

The foregoing cases suggest that a motion to value an exemption is not bound by the 30 day bar of Rule 4003. The bankruptcy court in this proceeding believed similarly, specifically stating that *Taylor* did not control in this instance. "The Trustee does not object to the Debtor's allowable Montana homestead exemption. Rather, the Trustee seeks a determination as to the allowable dollar value of such exemption. *Taylor* is therefore not dispositive of the issue of the allowable amount of the exemption." ORDER, June 19, 1995.

Regardless, the manner in which the exemption was valued is inherently ambiguous and calls for valuation at some point in the proceeding. When debtors claim an exemption at the "maximum allowed," that can only mean the maximum allowed by law. Montana law clearly provides that a claimant's homestead exemption is limited to an amount proportional to his ownership interest in the property. Mont.Code Ann. § 70–32–104(2) (1994).

*Alderman*, 195 B.R. at 111.

█ In this case, Debtor's exemption claim is just as ambiguous and imprecise as the claims that were found defective in the foregoing cases. The exemption claim states "FIVE LOTS LISTED IN QUALIFIED RETIREMENT PLAN," values them at $100,000, and cites the source of the exemption as CCP § 704.115 (which pertains to exempting private retirement plans). Yet the documents that Debtor provided to the Trustee did not demonstrate that a qualified retirement plan had been established, and the Trustee's own efforts revealed title records showing that four of the lots in question were owned by a trust rather than by Debtor (although Debtor stated in his schedules that he held no interests in any trusts).[14]

14. Debtor's counsel conceded at oral argu-   ment that no qualified retirement plan exist-

By describing the property claimed exempt as "FIVE LOTS LISTED IN QUALIFIED RETIREMENT PLAN" when there is no such plan and the property is actually owned by an entity other than Debtor or a retirement plan, the exemption claim refers to property that does not exist, and fails to refer to the property that does exist (*i.e.*, four lots with their titles held by a trust, in which trust Debtor may have an interest). Such a claim of exemption is not effective to render exempt any direct interest that Debtor may have in the trust that holds title to the subject lots, much less any indirect interest that Debtor may have in the lots themselves as property of the trust. Since the exemption claim does not, by its terms, pertain to either the lots or Debtor's interest in the trust that owns the lots, it cannot cause such property to become automatically exempt under *Taylor* when no timely objection is made to the claim. Accordingly, the Bankruptcy Court erred in denying the Trustee's motion to sell, based on Debtor's exemption claim.

■ The result we reach here, fully supported by the foregoing authorities, could have been achieved early in the case if the Trustee had sought and obtained an extension of the objection period as permitted by Rule 4003(b) until he had an opportunity to investigate fully the nature of Debtor's interest in the lots, the *bona fides* of the alleged retirement plan, and any other pertinent issues. Alternatively, he could have filed a timely objection to the exemption claim, briefly stating grounds such as the claim's failure to establish Debtor's entitlement to the exemption sought, or the claim's failure to identify the property claimed. As this case illustrates, trustees risk costly delays and the uncertainty of

litigation and appeals when they assume that failure to object to an imprecise and unsupported exemption claim will not result in automatic exemption under *Taylor*. By far the safer approach would be for trustees to take a conservative and skeptical view of exemption claims, and refuse to accept any claim of exemption that is not clearly legitimate on its face.

### B. Refusal to authorize sale free and clear under section 363(f)(4).

We are reversing the order denying the Trustee's sale because the Debtor did not unambiguously claim an exemption in property of the estate. In doing so, however, we reject the Trustee's argument that the sale should have been authorized free and clear of Debtor's exemption claim because a *bona fide* dispute existed as to whether the property was exempt, which is a ground under section 363(f)(4) for sale free and clear of liens and interests pending resolution of the dispute. This argument is flawed.

■ The purpose of § 363(f)(4) is to permit property of the estate to be sold free and clear of interests that are disputed by the representative of the estate so that liquidation of the estate's assets need not be delayed while such disputes are being litigated. *See, generally,* 3 Lawrence P. King, *Collier on Bankruptcy* ¶ 363.06 (15th ed. rev.1998). Typically, the proceeds of sale are held subject to the disputed interest and then distributed as dictated by the resolution of the dispute; such procedure preserves all parties' rights by simply transferring interests from property to dollars that represent its value. In this case, Debtor presumably believed the lots were his exempt property

---

ed; she also admitted that the exemption claim was not scheduled accurately, that applicable law would not prevent creditors from

reaching the lots in question, and that title to the lots is held by a trust.

and did not want them sold at all. His right to continue to own the lots would not have been preserved had they been sold, with his interest in them transferred to proceeds.

 The Trustee cites no authority for the proposition that section 363(f) permits sale of property free and clear of exemption claims. Pursuant to section 363(f), "property under subsection (b) or (c) of this section" may be sold free and clear of "any interest in such property of an entity other than the estate"—the property that can be sold free and clear under section 363(f) is defined by subsections (b) and (c) of section 363 as "property of the estate." *Id.* Pursuant to section 541(a), "property of the estate" consists generally of all property in which the debtor had an interest on the date of bankruptcy, but section 522(b) provides that a debtor may exempt property from the estate. *See Robertson v. Alsberg (In re Alsberg)*, 161 B.R. 680 (9th Cir. BAP 1993), *aff'd*, 68 F.3d 312 (9th Cir.1995), *cert. denied, Alsberg v. Robertson*, 517 U.S. 1168, 116 S.Ct. 1568, 134 L.Ed.2d 667 (1996). In other words, if the property is exempt it may not be sold by the Trustee; if it is not exempt, it may be sold. The threshold question, is it still property of the estate, must first be decided.

## V. CONCLUSION

The Bankruptcy Court erred in denying the Trustee's motion to sell the subject property, inasmuch as Debtor's exemption claim was not sufficiently clear and precise, and therefore too ambiguous, to render the subject property automati-cally exempt under *Taylor* when no timely objection to it was filed.

The order of the Bankruptcy Court is REVERSED and the matter REMANDED for the court to determine whether to authorize the sale.[15]

---

**15.** On remand the court should decide whether the Trustee is entitled to sell property owned by a trust rather than by Debtor. Should Debtor attempt to amend his schedules to claim the property as exempt, the court may also need to decide whether Debtor is entitled to exempt property he does not own, and if so, whether he is now precluded from amending his claim of exemption. *See Arnold v. Gill (In re Arnold)*, 252 B.R. 778 (9th Cir. BAP 2000). We express no opinion on any of these issues.